# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

E.P.,

    *Plaintiff*,

v.

G6 HOSPITALITY, LLC, *et al.*,

    *Defendants*.

Case No. 1:26-cv-02610-TWT-RDC

## OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND MOTION TO SHOW CAUSE

This should be an easy matter. It involves an untimely motion to compel answers to three questions from a percipient witness ("A.M.") to sex trafficking.[1] The unexplained untimeliness of the motion, filed over a month after discovery had closed in the underlying case, provides adequate reason to deny it. Even if the untimeliness could be excused, the motion still should be denied as moot: A.M. already answered two questions elsewhere in her deposition; A.M.'s counsel clarified the third through the meet-and-confer process. Swift denial (or transfer)

---

[1] The witness is a victim of sex trafficking. Presently pending before this Court is an emergency motion to protect her identity. In light of that pending motion and sensitive to the trauma suffered by exploited women, this pleading refers to her as "A.M."

1

recenters the parties' efforts on the underlying sex trafficking suit in Texas federal court, where discovery has closed and summary judgment remains pending.[2]

Instead, Defendants have mutated matters into a self-styled "motion for order to show cause" as to why Plaintiff's counsel should not be disqualified from representing A.M.  Defendants' motion is flawed in several respects, each of which is fatal to their request.  It sidesteps this Court's framework for examining motions to disqualify counsel.  It ignores settled doctrine placing the burden on the movant to demonstrate why the extraordinary remedy of disqualification should be granted. It overlooks relevant decisions while mischaracterizing others.  Indeed, not a single decision cited by Defendants disqualified counsel on the basis of simultaneous representation of a party and a witness.  It too should be denied.

Stripped of hyperbole, both motions are a brazen effort to separate a victim of sex trafficking from her counsel, allowing Defendants to interrogate her further without a trusted legal representative. This is little more than a litigator's sideshow,

---

[2] Plaintiff's counsel has simultaneously filed a Rule 45(f) motion to transfer both motions to the Eastern District of Texas, the issuing court and the venue of the underlying case.  Mindful of this Court's fourteen day deadline for oppositions, the simultaneous filing of the Rule 45(f) motion and the opposition tracks the procedures employed by courts elsewhere.  *See, e.g., Mirza v. Yelp, Inc.,* No. 21-mc-80077-TSH, 2021 WL 2939922 (N.D. Cal. July 13, 2021) (noting that party simultaneously filed motion to transfer and opposition to motion to compel).  In the event this Court grants the Rule 45(f) motion, Plaintiff's counsel reserves the right to supplement its arguments with additional citation to relevant precedent from the Fifth Circuit and its district courts.

filed after discovery closed, to distract from the serious matter: the trial in Texas to decide whether Defendants' hotel is liable for enabling the years-long sex trafficking of a minor girl.

## **BACKGROUND**

This case concerns sex trafficking. In the underlying federal case, sited in Texas, Plaintiff alleges that, while she was a minor, she was trafficked for sex at Defendants' hotel for several years. Defendants have denied responsibility.

A.M., the subject of the motion to compel, witnessed the sex trafficking of Plaintiff at Defendants' hotel. A.M. later revealed to Plaintiff's counsel that she also is a victim of sex trafficking at that hotel. On April 25, 2025, A.M. provided a sworn written statement containing first-hand information about the sex trafficking of Plaintiff at Defendants' hotel.

After denying Defendants' motion to dismiss in the Texas action, discovery ensued from April 2025 through April 2, 2026. On February 26, 2026, Defendants served a subpoena on A.M. By this time, Defendants were aware—and arguably had been aware for some time—that Plaintiff's counsel represented A.M. *See* Memo at 2; *see also* ███████████████████████████

███████████████████████████

Defendants requested that Plaintiff's counsel accept service of the subpoena on behalf of A.M., and Plaintiff's counsel agreed to do so. A.M.'s deposition was

scheduled for March 27, 2026, five days before discovery was due to close under the Texas judge's scheduling order.

On March 25, two days before the deposition, Defendants' counsel notified Plaintiff's counsel for the first time that they had "concerns" about their representation of A.M.  According to Defendants' counsel, Plaintiff made a statement in her deposition that allegedly exposed A.M. to civil and criminal liability.  ███████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

While the timing of Defendants' notification is not central to the argument below, it is relevant and deserves brief treatment.  Defendants' counsel raised this "concern" approximately four months after Plaintiff made the statement about ████████, at least 2.5 months (and possibly a year) after they became aware that Plaintiff's counsel was representing A.M., and approximately one month after requesting that Plaintiff's counsel accept service of A.M.'s subpoena.  Rather than raising this "concern" soon, Defendants' counsel raised it roughly 48 hours before the deposition, just before discovery closed in the underlying Texas case.

A.M.'s deposition went forward as scheduled and lasted only 2.5 hours.  Like countless depositions and testimonial subpoenas, the examining counsel asked

questions, and the witness's counsel periodically interposed objections, including objections on the grounds of attorney-client privilege.

Discovery closed on April 2, pursuant to the Texas federal judge's scheduling order.  On April 30, pursuant to that same order, Defendants moved for summary judgment.  That motion remains pending.

Roughly a month after discovery closed in Texas, Defendants filed the instant motions requesting two forms of relief.  First, Defendants seek to compel A.M. to answer three questions that, in their view, were not answered during her deposition. Second, Defendants' ask this Court to issue an order to show cause why Plaintiff's counsel should not be disqualified from representing A.M.

## ARGUMENT

Both of Defendants' requests should be rejected.  The motion to compel should be rejected because (A) it is untimely; (B) it is moot since the three contested questions have been answered; (C) Defendants' privilege arguments are wrong. The motion for an order to show cause should be rejected for a host of independent reasons: (A) it sidesteps this Court's standards for disqualification of counsel; (B) Defendants lack standing; (C) Defendants cannot carry their heavy burden to support the extraordinary remedy of disqualifying counsel.

5

I.      **The Motion to Compel Should Be Denied Because It Is Untimely and, in all events, the Three Questions at Issue All Have Been Answered.**

**A. The Motion To Compel Is Untimely.**

Motions to compel are discovery tools.  They must respect the deadlines set forth in the discovery process.  Sometimes, Local Rules establish those deadlines. *See* NDGA Local Rule 37.1(B) ("Unless otherwise ordered by the Court, a motion to compel a disclosure or discovery must be filed within the time remaining prior to the close of discovery or, if longer, within fourteen (14) days after service of the disclosure or discovery response upon which the objection is based.").  In other instances, a judge's scheduling order establishes those deadlines. *See also Days Inn Worldwide v. Sonia Invs.*, 237 F.R.D. 395, 397-98 (N.D. Tex. 2006) (collecting cases for the proposition that motions to compel filed after discovery deadline can be rejected as untimely).  A motion to compel that fails to heed those deadlines can be rejected on the ground that it is untimely. *See, e.g., Harvey v. Walmart, Inc.*, No. 1:21-cv-03265-VMC, 2023 WL 3029655 at *2 (N.D. Ga. Mar. 27, 2023); *Knox v. Kadenzo Enter., Inc.*, No. 1:20-CV-04948-SCJ, 2022 WL 22889496 at *13 (N.D. Ga. Sept. 8, 2022).[3]

---

[3] Courts in the Eastern District of Texas, the issuing court of the subpoena and venue of the underlying litigation, have also rejected motions to compel on grounds of untimeliness where, without cause, they were filed after discovery had closed. *See, e.g., Nexus Display Tech. LLC v. Dell Inc.*, No. 2:14-CV-762, 2015 WL 13544186, at *2 (E.D. Tex. Nov. 2, 2015) (finding motion to compel untimely when it was filed roughly six weeks after discovery had closed and where movant "would have been

Here, Defendants' motion to compel is untimely.    Defendants do not acknowledge in their motion that **discovery closed on April 2 in the underlying case.** Under the scheduling order of the federal judge in Texas – the same court that issued the subpoena that gives rise to this matter – Defendants' motion is untimely. Moreover, even under this Court's Local Rules, Defendants' motion is untimely because it was not filed "prior to the close of discovery" or "within fourteen (14) days" of A.M.'s deposition. Instead, they filed it on May 4, over a month after discovery closed, and summary judgment was pending. On this ground alone, Defendants' motion should be denied. *See In re Cryolife, Inc. Sec. Litig.*, No. 1:02-CV-1868-BBM, 2005 WL 8155579 at *5 (N.D. Ga. June 17, 2005) (denying motion to compel that was filed one month after discovery closed and ordering movant to pay attorneys' fees and costs incurred in responding to motion).

### B. Even if the Motion To Compel Were Timely, It Is Moot.

In the context of a testimonial subpoena, a party files a motion to compel only where one or more questions from the deposition go unanswered. *See* Fed. R. Civ. P. 37, 45. As a corollary, such a motion is not appropriate (or necessary) when the contested question is answered during the deposition. *See Alexander v F.B.I.*, 186 F.R.D. 78, 92-94 (D.D.C. 1998). *Cf. Crider, Inc. v. Convenience Food Sys., Inc.,*

aware of the parties' privilege disputes" for at least ten days before deadline); *Days Inn Worldwide*, 237 F.R.D. at 397-98 (finding motion to compel untimely when it was filed two weeks after discovery closed).

No. CV604-102, 2005 WL 8157607, at *2 (S.D. Ga. Aug. 15, 2005) (citing *Sendi v. Prudential-Bache Sec.*, 100 F.R.D. 21, 23 (D.C.D.C. 1983)) ("[W]here complete answers are contained in prior depositions, then a motion to compel answers to subsequent interrogatories seeking to elicit the same information should be denied as burdensome, vexatious, oppressive and totally without justification."). For this reason, among others, a motion to compel is moot when discovery has already been provided. *See Dae Eek Cho v. United States*, 687 Fed.Appx. 833, 839 (11th Cir. 2017); *Cahela v. James D. Bernard, D.O., P.C.*, 155 F.R.D. 221, 226 (N.D. Ga. 1994). That rule resolves this case.

Defendants' motion to compel only concerns three questions. The first question asked A.M. whether she had ███████████████████████ ██████████████ *See* Memo at 4. A.M.'s counsel made clear that she *could* answer based on her personal understanding but, citing attorney-client privilege, advised her not to reveal counsel's communications to her about the case. A.M. then answered examining counsel's question at pages 28-29 of her deposition when she said: ██████ A.M.'s answer moots the motion to compel as to this question.

A.M. also answered the second question. The second question asked A.M. ████████████████████████████████████ *See* Memo at 6. Again, A.M.'s counsel made clear that she *could* answer that question so long as she did not reveal counsel's communications to her. *Id.* A.M. answered the question at page 41

8

of her deposition.   Examining counsel inquired whether the investigator ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In response to this question,

A.M. answered: ▇▇▇▇   Defendants concede this, though they bury this concession

in a footnote in the section of their pleading labeled "Background" without

examining the implications of their concession in the section of their pleading

labeled "Argument."  *Compare* Memo at 4 n. 3, *with id.* at 6-7.  A.M.'s answer moots

the motion to compel as to this question.

Defendants attempt to escape the implications of their concession by claiming

that, notwithstanding A.M.'s answer, they were ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 4 n. 3.  There are at least

two problems with this argument.  First, Defendants did not ask this question during

A.M.'s deposition, and a party may not use Rule 37 to compel an answer to a

question that was never asked.  *See Bailey v. Equifax Credit Info. Servs., Inc.*, No.

1:14-CV-797-MHC-JCF, 2016 WL 11540575 at *4 (N.D. Ga. July 11, 2016).  *Cf.*

*Driscoll v. Shuttler,* 115 F.R.D. 571, 574 (N.D. Ga.1987) ("Because the documents

plaintiffs now move to compel were not requested, they cannot now be the subject

of a motion to compel.").  Second, even if the question were preserved (and it was

not), it makes no sense: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

█████████████████████████████████████████████████

████████████████████████

The meet-and-confer process resolved the third question.  The third question concerned whether counsel's representation of A.M. ██████████████████ ████████████████████████████████   At the time of A.M.'s deposition, counsel objected on the ground that, like the other two questions, it risked intruding upon communications between A.M. and her attorney.  During the meet-and-confer process, the parties explored this question, and A.M.'s counsel answered the question clearly in an email to Defendants' counsel:

> ***I have never, and would never, make my representation of any client contingent upon such a thing*** and the fact that you asked that question and continue to push this narrative is frankly offensive. These cases are difficult on everyone, the clients, the lawyers, probably even the Court. I've been doing these cases, and only these cases, for seven years. I have been in scores of extremely contentious situations with opposing counsel regarding very sensitive subjects. But this is the first time that my professional ethics have been questioned.

███████████████████████████████████████

When parties reach an understanding regarding discovery, the meet-and-confer process should obviate the need for a motion to compel.  *See D'Ambra v. Carnival Corp.*, No. 24-CV-23677-BLOOM/Elfenbein, 2025 U.S. Dist. LEXIS 117487, at *12 (S.D. Fla. June 20, 2025) ("Parties are expected to have meaningful discussions to determine the appropriate scope of discovery without the need for Court intervention," and the Court may deny a motion to compel if parties already

reached an agreement during the meet and confer.) Here, the exchange between counsel makes clear that the answer to the third question is "no" and moots any motion to compel as to this question.

### C. Defendants' privilege arguments are wrong.

Given that all three questions have been answered, Defendants' extended exposition on attorney-client privilege and waiver may be of theoretical interest to Civil Procedure professors but offers little of practical value to the Court or parties. Nonetheless, insofar as Defendants, by their motion, seek to plumb what A.M.'s counsel actually communicated to A.M., this pleading briefly explains why Defendants are wrong on the law.

Defendants readily admit that the attorney-client privilege "extends to all confidential communications between lawyer and client where the purpose of such communication is the provision of seeking of legal advice." Memo at 7 (citing *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334 (11th Cir. 2018)). That should end the matter. As noted above, counsel permitted A.M. to answer questions insofar as she was relating her personal knowledge but simply ensured that she did not reveal communications from her attorney. *See* Memo at 8 ("[E]verything based on her personal knowledge at the hotel is fair game."). Far from exceeding the bounds of the privilege, counsel protected it.

11

Defendants appear to argue that their three questions at issue in this motion touched upon communications not protected by the privilege. But the decisions cited in support of their argument, virtually none of which come from this circuit, do not support their view. Some are readily distinguishable. *See, e.g., Wilcox v. Andalusia City Sch. Bd. of Educ.*, 682 F. Supp. 3d 1019, 1031-32 (M.D. Ala. 2023) (information conveyed in attorney's capacity as a witness's "friend" and counsel for another party and not as her attorney). Other cases are advanced for the proposition that the "terms or fact of an attorney's representation are not inherently privileged." Memo at 9-10. Here, of course, the "fact" of counsel's representation of A.M. is well known; moreover, Defendants can hardly be heard to complain about not knowing the "terms" of counsel's representation when Defendants' own counsel voluntarily withdrew a request for that information, and discovery has now closed. ███████

███████████████████████████████ *Compare In re Grand Jury Investigation*, 769 F.2d 1485, 1487 (11th Cir. 1985) (permitting grand jury in criminal investigation to ask amount of fee when existence of fee already known). At bottom, Defendants' argument amounts to little more to a completely unsubstantiated hope that counsel either ████████████████████████████

████████████████████████████████

████████████████████████████████

12

████████████████████████████

███████████████████████

Defendants argue that, even if attorney-client privilege attached, it was impliedly waived because A.M. was designated as a witness. While citing Eleventh Circuit precedent on implied waiver, *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994), Defendants fail to note that *Cox* found that the privilege was <u>not</u> waived; nor did they explain the grounds upon which implied waiver can occur. The Eleventh Circuit recognizes waiver by implication in three circumstances: (1) when a client testified concerning portions of the attorney-client communication; (2) when a client places the attorney-client relationship directly at issue; and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense. *United States v. Kowalewski*, No. 2:13-CR-00045-RWS, 2014 WL 6667127, at *14 (N.D. Ga. Nov. 24, 2014).  In each circumstance, the party asserting the privilege placed information protected by it in issue through some affirmative act for their own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. *Cox*, 17 F.3d at 1418 (quoting *Pitney–Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447 (S.D. Fla. 1980)). Here, Defendants have offered no facts supporting any of these three grounds for implied waiver.  Far from it.  A.M.'s counsel did precisely what the law required by

13

advising his client that she could testify but should not testify "concerning portions of the attorney-client communications."

Defendants try to circumvent the logical force of Eleventh Circuit precedent by urging a rule that assertions of attorney-client privilege are "suspect" when counsel simultaneously represents a client and a non-party fact witness.  Yet the cases cited by Defendants do not support their waiver argument.  Two of those cases are readily distinguishable.  *See Sapia v. Bd. of Educ. of City of Chicago*, 351 F.Supp.3d 1125 (N.D. Ill. Jan. 11, 2019) (noting that attorney solicited witness and engaged in witness tampering); *Adkisson v. Jacobs Eng'g Grp.*, No. 3:13-CV-505-TAV-HBG, 2016 WL 6534273 at *3-6 (E.D. Tenn. Nov. 1, 2016) (finding that counsel intentionally rejected ethical guidance and did not consistently interpose privilege objections during deposition).  The third, *Mid-State Aftermarket*, does not stand for the proposition for which Defendants cite it.  Defendants read that decision for the proposition that the court permitted dual representation "in part because counsel agreed that witness could be questioned about attorney communications regarding preparation of the affidavit."  Yet the opinion states no such thing. *See Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, No. 4:03CV00733 JLH, 2009 WL 1211440, at *4 (E.D. Ark. May 4, 2009). The Court gives a litany of reasons why dual representation was appropriate.  The only thing remotely approaching Defendants' reading is the line that one party "will be permitted to tell the jury what

[the witness] said in his affidavit and during his communication with [an attorney] before the deposition about buying thousands of [that party's] parts from [the other party]." *Id.* This hardly is a wholesale endorsement of "questioning" about "attorney communications regarding preparation of" the witness' affidavit.

To summarize, the motion to compel is moot because the only three questions at issue have all been answered. To the extent any questions *actually asked* during the deposition still are unanswered because they went to counsel's communications with A.M., attorney/client privilege protects those communications, and the privilege was not waived.

## II.   The Motion for an Order to Show Cause Should Be Denied.

Inexplicably, Defendants' motion for an order to show cause does not cite (much less examine) binding Eleventh Circuit doctrine governing the disqualification of counsel. To assist this Court with resolving – and rejecting – that motion, this pleading supplies that doctrine.[4]  Four principles are central.

---

[4]   Elsewhere, Defendants' counsel has argued for the high standard for disqualification in the Second Circuit, whose standards largely track those of the Eleventh Circuit:

"The Second Circuit has repeatedly stated that motions to disqualify are disfavored because they are often interposed solely for perceived tactical gains. *See Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989); *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983); *Bd. of Educ. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Additionally, any disqualification of counsel impinges on a party's right to employ the attorney of its choice and inflicts "serious

15

*First*, the party *bringing* the motion to disqualify bears the burden of proving the grounds for disqualification. *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745 (11th Cir. 2006); *In re: BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir.2003).

*Second*, disqualification is viewed with disfavor as an extraordinary remedy, especially "where extensive discovery and trial preparation have been completed." *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir.1982). *See also Keohane v. Keene*, No. CIV.A. 1:06-CV-0034-RWS, 2006 WL 1275056, at *1 (N.D. Ga. May 8, 2006) (collecting cases for the proposition that disqualification motions are disfavored). Disqualification both overrides the client's presumptive right to choose his own lawyer and may also impose hardships on the litigant. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). Such motions "inevitably

---

harm" upon a party whose lawyer is disqualified. *Paramount Commc'ns, Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994) (cleaned up).

Given its dislike of disqualification motions, the "Second Circuit is less inclined than state courts to disqualify counsel based on conflicts of interest." *Russell-Stanley Holdings, Inc. v. Buonanno*, 210 F. Supp. 2d 395, 398 n.1 (S.D.N.Y. 2002) (citing *Nyquist*, 590 F.2d at 1246). Unlike in state court, "it does not necessarily follow that [federal] courts should disqualify counsel whenever they perceive a breach of the Code of Professional Responsibility." *Id.* at 397. The Second Circuit requires a higher standard of proof on the part of the party seeking to disqualify opposing counsel. *See, e. g., Evans*, 715 F.2d at 791. Memorandum of Law in Opposition to Plaintiffs' Motion to Disqualify Jones Day as Counsel for Defendant Westbrook Allegro, L.L.C. and to Enjoin Jones Day and Kent Richey From Disclosing Information ("Jones Day Disqualification Memorandum"), in *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, No. 05 CV 9547, 2006 WL 1434131 (S.D.N.Y. Apr. 3, 2006).

16

cause delay." *Adkins v. Hosp. Auth. of Houston Cnty., Ga.*, No. 5:04-CV-80 (CAR), 2009 WL 3428788, at *6 (M.D. Ga. Oct. 20, 2009) (citation omitted), *aff'd sub nom.*, *McGriff v. Christie*, 477 Fed.Appx. 673 (11th Cir. 2012). Delay aside, these motions also often inconvenience otherwise innocent clients and cause significant expense associated with finding new counsel and getting counsel up to speed. *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005).

*Third*, a motion to disqualify **brought by opposing counsel** "should be viewed with caution ... for it can be misused as a technique of harassment." Ga. Rules of Prof. Conduct, R. 1.7, cmt. 15.  Opposing counsel may not use disqualification motions as "procedural weapons" to advance purely tactical ends. *In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992).

*Fourth*, it is not facially improper to simultaneously represent a party in a case and to represent a non-adversarial, fact witness in that case.  *See Reece v. United Home Health Care of Atlanta*, No. 1:12-CV-2070-RWS, 2014 WL 1775499, at *2 (N.D. Ga. May 2, 2014); *ChemFree Corp. v. J. Walter, Inc.*, 2008 WL 5234252, at *2 (N.D. Ga. June 11, 2008).

Evaluated against these four principles, Defendants' motion fails in several independent respects.[5]

---

[5] The Fifth Circuit, the venue of the underlying case, observes similar principles. *See, e.g., W&T Offshore, Inc. v. Endurance Assurance Corp.,* No. 4:24-cv-3047, 2025 WL 1556601, at *2 (S.D. Tex. June 2, 2025) ("Motions to disqualify are subject

**A. Motions to show cause are not a cognizable method by which to challenge counsel's continued representation.**

This Court's rules and decisional law set forth two mechanisms for disqualifying counsel. The first is a motion to disqualify. *See, e.g.*, *Reece*, 2014 WL 1775499, at \*2. The second is a request for a disciplinary investigation. *See* N.D. Ga. Local Rule 83.1(F)*; see also ChemFree Corp.*, 2008 WL 5234252, at \*2 (applying Local Rule 83.1).

Here, Defendants invoked neither mechanism. They have not filed a motion to disqualify, perhaps because, as explained below, they recognize that they cannot satisfy the above-described "heavy burden" required to support a motion to disqualify. Nor have they requested a disciplinary investigation, again because they cannot satisfy the exacting standards required to justify one, much less to warrant a referral. *See Am. Fam. Ins. Co. v. Almassud*, 1:16-CV-4023-RWS, 2018 WL

---

to an exacting standard both to protect a party's right to counsel of choice as well as to discourage the use of such motions as a dilatory trial tactic. The movant bears the burden of proving that disqualification is warranted, and that burden is heavy, especially where a party files a motion to disqualify opposing counsel, as opposed to a client's motion to disqualify his own counsel because motions to disqualify from an opponent have the potential to be used as procedural weapons advancing purely tactical purposes, such as delay or harassment.") (cleaned up); *Britt v. Smith*, No. 6:21-CV-00384-JCB, 2022 WL 21737790, at \*2 (E.D. Tex. Feb. 17, 2022) ("The party seeking the disqualification of an attorney bears the burden of proving that disqualification is warranted. This is especially true where a party files a motion to disqualify opposing counsel, as opposed to a client's motion to disqualify his own counsel: Motions to disqualify from an opponent have the potential to be used as procedural weapons advancing purely tactical purposes, such as delay or harassment.") (cleaned up).

11440986 at *7 (N.D. Ga. July 12, 2018); *ChemFree*, 2008 WL 5234252.   Unable

to satisfy those high standards, Defendants' motion does not offer any legal support

for the proposition that a self-styled motion for an order to show cause offers some

"third way" to circumvent these high standards.

Precedent from the Eleventh Circuit and elsewhere does not support this "third

way."  It runs afoul of the Eleventh Circuit's instruction in *Hermann* that places the

burden on the moving party to *prove* disqualification.  It also runs afoul of prior

district court decisions rejecting similar tactics like motions for discovery in support

of a motion to disqualify.  *See Reece*, 2014 WL 1775499, at *3 (denying alternative

motion for discovery in support of motion to disqualify).   As federal courts

elsewhere have recognized, motions like these "improperly sidestep [] the rigorous

legal standards for bringing a motion to disqualify." *Doe v. Santa Fe Pub. Schs.*, No.

CV 23-1025 GBW/JFR, 2025 WL 1426572, at *6 (D.N.M. May 16, 2025); *see also*

*F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995) (Even "[a]

disqualification *inquiry*, particularly when instigated by an opponent, presents a

palpable risk of unfairly denying a party the counsel of [its] choosing.") (emphasis

added).  Much like the movant in *Doe*, Defendants here "surreptitiously raise [] the

specter of disqualification, *i.e.*, 'determination as to continuation of counsel,' … but

ha[ve] not brought a motion to disqualify nor complied with the legal standards when

seeking to do so." *See Doe,* 2025 WL 1426572, at *6. Just like the court in *Doe*, this

19

Court should not indulge Defendants' effort to sidestep this Circuit's "rigorous legal standards." *See id.*

## B. Defendants lack standing to file the motion to show cause.

Even if such a self-styled motion to show cause could be entertained (and it cannot), Defendants lack standing to bring it.  In the 1976 decision *In Re Yarn Processing*, the Fifth Circuit held that, with limited exception, a motion to disqualify counsel on the basis of a conflict between two clients can only be brought by the clients themselves.  530 F.2d 83, 90-91 (5th Cir. 1976).  *Yarn Processing* rejected the broad proposition that a third-party enjoyed standing to seek disqualification of counsel with whom the counsel was not in an attorney-client relationship.  *Yarn Processing*'s standing rule continues to govern in the Fifth Circuit. *See In re Am. Airlines, Inc.*, 972 F.2d at 614; *Centerboard Sec. LLC v. Benefuel Inc.*, No. 3:15-CV-2611-G, 2016 WL 3126238, at *2 (N.D. Tex. June 3, 2016).  While the Eleventh Circuit has only cited *Yarn Processing* once, *see Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988), it still binds the Circuit and its district courts. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) ("[D]ecisions of the United States Court of Appeals for the Fifth Circuit […] as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit").  Moreover, given that the underlying case here is in the Fifth Circuit and Defendants' motions could

20

be transferred there, *see* Fed. R. Civ. P. 45(f), *Yarn Processing* warrants close examination.

Under *Yarn Processing*, Defendants lack standing to seek to disqualify counsel. Neither Plaintiff nor A.M., the actual clients, have requested disqualification. *Compare Celgard, L.L.C. v. L.G. Chem., Ltd.*, 594 Fed.Appx. 669, 671-72 (Fed. Cir. 2014) (Client granted leave to intervene to disqualify counsel, due to the impact of counsel's representation of client's interests in other litigation, when counsel declined to withdraw voluntarily). Nor does this case fit within the narrow exceptions to *Yarn Processing*'s standing rule. *See Centerboard Sec. LLC*, 2016 WL 3126238, at *3 (concluding that party lacked standing to move to disqualify opposing party's counsel based upon simultaneous representation of fact witness "because it is not [counsel's] current or former client"); *Landmark Am. Ins. Co. v. Gargoyle Mgmt. Inc.*, 5:24-CV-038-H-BV, 2024 WL 5424896, at *3-4 (N.D. Tex. Nov. 19, 2024) (rejecting motion to disqualify based on lack of standing); *see also Est. of Adams v. City of San Bernadino*, 658 F.Supp.3d 784, 790-92 (C.D. Cal. 2023) (same). Thus, under *Yarn Processing*, whether as a precedent binding on this Court or one due respectful consideration as circuit precedent in the venue of the underlying lawsuit, Defendants' motion should be dismissed due to lack of standing.

**C. In all events, Defendants have failed to meet opposing counsel's weighty burden to justify the extraordinary remedy of disqualification.**

Even if Defendants could sidestep this Circuit's standard through a motion to show cause (they cannot) and even if Defendants had standing (they do not), they cannot satisfy this opposing counsel's heavy burden to warrant disqualification of counsel.

The essence of Defendants' argument is that counsel's dual representation of Plaintiff and A.M. creates a disqualifying conflict under Georgia Rule 1.7.  That rule provides that a counsel shall not continue to represent a client where "if there is a significant risk that … the lawyer's duties to another client … will materially and adversely affect the representation of the client."  Defendants allege that this "significant risk" comes in two forms.  These allegations fail to carry Defendants' heavy burden, especially as opposing counsel seeking to disqualify after extensive discovery has been completed.

First, according to Defendants, Plaintiff's statement that A.M. posted her phone number on Backpage risks exposing her to criminal and civil liability.  This does not carry opposing counsel's heavy burden to warrant the extraordinary remedy of disqualification.  Criminal liability, of course, is not a claim belonging to the Plaintiff.  Moreover, a criminal count of trafficking also requires proof and Defendants offer no indication how those other essential elements are at issue.  *See Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp.3d 719, 728 (E.D. Tex. 2024) (outlining

22

the elements of criminal and civil liability under the TVPRA). And Plaintiff has not brought a civil claim against A.M., who is a sex trafficking victim herself. The remote likelihood of such a claim counsels against disqualification. Such "[m]ere speculation will not suffice." *George v. City of Buffalo*, 789 F.Supp.2d 417, 435 (W.D.N.Y. 2011).

Second, Defendants cite a trio of cases that purportedly support the proposition that "courts permit dual representation of a party and nonparty witness only where the witness's testimony is favorable to the other client." Memo at 16. But those three cases (none of which come from within this Circuit) do not support that proposition. In all three cases, the court *declined* to order disqualification. Moreover, those cases all recognize that dual representation of a party and a non-party fact witness can be appropriate. Finally, none of those cases holds (or suggests) that dual representation *only* is appropriate if the witness provides favorable testimony to the client.

Defendants' use of a stray quote from *Mid-State Aftermarket* supplies a good example of how the law does not support their requested relief. As the Southern District of New York recently recognized in a case where a party similarly tried to misuse the same quote, the court in *Mid-State Aftermarket* actually **denied** the motion for disqualification since there was no actual conflict between the non-party witness and the Defendant. *See Ni v. HSBC Bank USA, N.A.*, No. 23-CV-0309 (AS)

(KHP), 2024 WL 5700200, at *4 (S.D.N.Y. Aug. 12, 2024) (citing *Mid-State Aftermarket Body Parts*, 2009 WL 10711612 at *5-6).    In fact, *Mid-State Aftermarket* collected cases holding that similar dual-representations are permissible, absent an actual conflict of interest.  2009 WL 10711612, at *5-6.  Thus, just like *Ni*, *Mid-State Aftermarket* "does not support" the party seeking to disqualify counsel from simultaneously representing Plaintiff and A.M.

Finally, consider the alleged contradiction in light of the underlying case. Recall that the underlying federal case in Texas concerns Plaintiff's claim that **Defendants** are civilly liable for the sex trafficking that occurred at their hotel while she was a minor. ██████████████████████████████████ ██████████████████████████████████ Consequently, even if Plaintiff and A.M. have differing recollections, the inconsistencies between their accounts would not impact the jury's determination about **Defendants'** civil liability.

At bottom, Defendants "do not come close to meeting [the] high standard of proof" necessary to support a motion to disqualify counsel. Jones Day Disqualification Memorandum in *Occidental Hotels* at Argument, Section I.

## CONCLUSION

For the foregoing reasons, Defendants' motions should be denied.

Respectfully submitted this 15th day of May 2026,

By:      /s/ *Peter B. Rutledge*
Peter B. Rutledge
Georgia Bar Number:  955349
TAFT STETTINIUS & HOLLISTER LLP
3343 Peachtree Rd NE
1600 Atlanta Financial Center
Atlanta, GA 30326
T: 404 364 3176
F: 404 365 9532
brutledge@taftlaw.com
*Counsel for Andersen, Tate & Carr P.C.*

Patrick J. McDonough
Georgia Bar Number:  489855
Jonathan S. Tonge
Georgia Bar Number: 303999
Jennifer M. Webster
Georgia Bar Number: 760381
ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, GA 30097
T: 770 822 0900
F: 770 822 9680
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com
jwebster@atclawfirm.com
*Counsel for Nonparty A.M.*

## CERTIFICATE OF COMPLIANCE

Under Local Rule 7.1(D), I hereby certify that the foregoing complies with the applicable font type, size and margin requirements and is formatted in Times New Roman 14-point font.

_/s/ Peter B. Rutledge_____
Peter B. Rutledge

## CERTIFICATE OF SERVICE

I hereby certify that on 15 May 2026, I caused the foregoing document to be served on the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record.

_____*/s/ Peter B. Rutledge*_____
Peter B. Rutledge